**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LILY DOBROVOLSKAYA, | |
|     Movant, | Case No.:   25-mc-32 |
| v. | [Related to Case No. 23-cv-61256-JB pending in the Southern District of Florida] |
| MONARCH AIR GROUP, LLC., | |
|     Respondent. | |

**NON-PARTY LILY DOBROVOLSKAYA'S MEMORANDUM IN SUPPORT OF**
**MOTION TO QUASH SUBPOENA**

DAVIS WRIGHT TREMAINE LLP

By: */s/ Rachel Strom*
Rachel Strom
rachelstrom@dwt.com
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone (212) 402-4069

THOMAS & LoCICERO PL

Dana J. McElroy (*pro hac vice forthcoming*)
Florida Bar No. 845906
dmcelroy@tlolawfirm.com
915 Middle River Drive, Ste. 309
Fort Lauderdale, FL 33304
Telephone (954) 703-3416

James J. McGuire (*pro hac vice forthcoming*)
Florida Bar No. 187798
jmcguire@tlolawfirm.com
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................................ iv

PRELIMINARY STATEMENT ..................................................................................................... 1

The Parties and the Article ........................................................................................................ ...2

The Florida Litigation ................................................................................................................ ..3

The Subpoena to Dobrovolskaya ................................................................................................. 4

DISCUSSION .............................................................................................................................. 5

I.      To The Extent There Is Any Conflict Of Law Between The New York And Florida
        Journalists' Privilege, New York Law Should Apply ...................................................... 5

II.     The Court Should Quash The Subpoena Because It Would Require Disclosure Of
        Privileged Or Other Protected Matter .......................................................................... 7

        A.  The Subpoena Should Be Quashed With Regard To Confidential Source
            Information ........................................................................................................ 7

            1.  The Recordings Are Absolutely Privileged Under New York's
                Shield Law ............................................................................................ 8

            2.  The Recordings Also Are Privileged Under Florida's
                Shield Law ............................................................................................ 9

        B.  The Subpoena Should Be Quashed With Respect To Dobrovolskaya's
            Communications With The Miami Herald ............................................................ 11

        C.  The Subpoena Should Be Quashed With Respect To Dobrovolskaya's
            Communications With Patrick Simpson ............................................................... 14

        D.  The Subpoena Should Be Quashed With Respect To Documents Relating To
            Dobrovolskaya's Tweet About Monarch's "Mercury Jets Division" ....................... 16

III.    The Court Should Quash The Subpoena Because It Seeks Documents That Are Not
        Relevant ...................................................................................................................... 18

CONCLUSION ........................................................................................................................... 18

CERTIFICATE OF COMPLIANCE ........................................................................................ 19

CERTIFICATE OF SERVICE ............................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                  **Page(s)**

*Baker v. Goldman Sachs & Co.*, 669 F.3d 105 (2d Cir. 2012) ............................. 5, 14, 15, 17, 18

*Breaking Media, Inc. v. Jowers*, 21 Misc. 194 (KPF), 2021 WL 1299108
(S.D.N.Y. Apr. 7, 2021) ................................................................................................. 6, 11, 18

*Granite State Ins. Co. v. Clearwater Ins. Co.*, No. 09 Civ. 10607(RKE), 2014 WL 1285507
(S.D.N.Y. Mar. 31, 2014) ........................................................................................................ 6

*Gubarev v. BuzzFeed, Inc.*, No. 1:17-cv-60426-UNGARO/O'SULLIVAN, 2017 WL 6547898
(S.D. Fla. Dec. 21, 2017) ....................................................................................................... 10

*In re Application to Quash Subpoena to Nat'l Broad. Co., Inc.*, 79 F.3d 346 (2d Cir. 1996) ........ 5

*Matter of Holmes v. Winter*, 22 N.Y.3d 300 (2013) ....................................................................... 8

*McCarty v Bankers Ins. Co., Inc.*, 195 F.R.D. 39 (N.D. Fla. 1998) ..................... 6, 14, 16, 17, 18

*Monarch Air Group, LLC v. Journalism Development Network, Inc.*, No. 23-CV-61256-
BECERRA/STRAUSS, 2024 WL 4826040 (S.D. Fla. Nov. 19, 2024) .......................... 4, 12, 13

*Stephens v. Am. Home Assurance Co.*, No. 91Civ2898 (JSM) (KAR), 1995 WL 230333
(S.D.N.Y. Apr. 17, 1995) ...................................................................................................... 11

*Ulrich v. Coast Dental Servs., Inc.*, 739 So. 2d 142 (Fla. Dist Ct. App. 1999) ............................ 6

*United States v. Thompson*, No. 14–20522–CR, 2015 WL 1608462
(S.D. Fla. Apr. 10, 2015) ............................................................................................... 9, 13, 15

*WTVJ-NBC 6 v. Shehadeh*, 56 So. 3d 104 (Fla. Dist. Ct. App. 2011) ......................................... 10

**Statutes**

Fla. Stat. § 90.5015 ........................................................................................................................ 6

Fla. Stat. § 90.5015(2) .................................................................................................... 6, 9, 14, 15

Fla. Stat. § 90.5015(3) .................................................................................................................... 6

Fla. Stat. § 95.11(5)(h) ................................................................................................................. 17

N.Y. Civ. Rights Law § 79-h ......................................................................................................... 5

N.Y. Civ. Rights Law § 79-h(b) .................................................................................................... 8

N.Y. Civ. Rights Law § 79-h(c) .................................................................................................. 14

N.Y. Civ. Rights Law § 215(3) .................................................................................................. 17

**Rules**

Fed. R. Civ. P. 45 ........................................................................................................................ 1

Fed. R. Civ. P. 45(d)(1) ............................................................................................................ 18

Fed. R. Civ. P. 45(d)(3)(A)(iii) .................................................................................................. 7

Fed. R. Civ. P. 45(d)(3)(A)(iv) ................................................................................................ 18

**Other Authorities**

N.Y. Const. Art. I, § 8 ................................................................................................................ 5

Non-party Lily Dobrovolskaya[1] ("Dobrovolskaya"), through her counsel, respectfully submits this Memorandum of Law in Support of her motion under Fed. R. Civ. P. 45 to quash a subpoena to produce documents (the "Subpoena") served upon her by Monarch Air Group, LLC, the Plaintiff in a defamation lawsuit pending in the United States District Court for the Southern District of Florida.[2]

## PRELIMINARY STATEMENT

This dispute arises from a defamation lawsuit titled *Monarch Air Group, LLC v. Journalism Development Network, Inc.*, No. 23-cv-61256-JB, currently pending in the Southern District of Florida (the "Florida Litigation"). Non-party Dobrovolskaya wrote an investigative news article that is the subject of that lawsuit (the "Article").

The Subpoena is directed to Dobrovolskaya, who at all relevant times was a professional journalist, and seeks material gathered and created by her within the scope of her work as a journalist. Now and at the time that she researched, gathered information, wrote, revised, and participated in editing the Article, Dobrovolskaya resided in New York. The Article itself was focused on a Florida company. As explained in greater detail below, Dobrovolskaya's work as a journalist is privileged under the First Amendment, under New York law, and under Florida law. In order to ensure a free and robust press, all three sources of law provide important protections against intrusion by litigants into journalists' newsgathering and reporting processes and decisions. Irrespective of which law is applied, the Subpoena should be quashed.

Critically, some of the information sought by the Subpoena involves confidential sources

---

[1] Lily Dobrovolskaya spells her name "Lili Dobrovolskaia," but the Complaint and the caption in the underlying matter spell her name as "Lily Dobrovolskaya." For consistency and to avoid any confusion, she will use the spelling currently used in the pleadings ("Dobrovolskaya"). *See* Declaration of Lili Dobrovolskaia ("L.D. Decl.") ¶ 3.

[2] *See* Declaration of Dana J. McElroy ("McElroy Decl."), Exh. A (the "Subpoena").

who provided information to Dobrovolskaya. Such confidential-source information is absolutely privileged under New York law. And under Florida law, newsgathering from confidential sources can be divulged only in exceptional circumstances, which are not met here.

### The Parties and the Article

At the time of publication of the Article, Dobrovolskaya was a professional journalist residing in New York.[3] Monarch Air Group, LLC ("Monarch" or "Plaintiff"), the plaintiff in the Florida Litigation, is an air charter company located in Florida.[4] Journalism Development Network ("JDN"), the defendant in the Florida Litigation, is a news organization that publishes a website titled the Organized Crime and Corruption Reporting Project at occrp.org, which creates and disseminates investigative news reports.[5]

In November of 2020, JDN published the Article on its occrp.org website. The Article was titled "Flight of the Monarch: US Gov't Contracted Airline Once Owned by Russian Criminals." *See* Complaint, Exh. A. JDN in June of 2021 published a revised version of the Article, including clarifications and corrections, under the title "Flight of the Monarch: US Gov't Contracted Airline Once Owned by Criminals with Ties to Russian Mob." *Id.*, Exh. D; *see also* McElroy Decl., Exh. E. The Article was the result of many months of investigation, newsgathering, writing, and editing by Dobrovolskaya and JDN. *See* L.D. Decl. at ¶¶ 4-5.

The Article reported on Monarch's business and explained that Monarch and one of its affiliates had been tasked with moving fuel in Israel for the Department of Defense, flying people around Afghanistan, and transporting protected witnesses in the U.S. for the Marshals Service. McElroy Decl., Exh. E at pp. 2-3. The Article also reported truthfully on Monarch's

---

[3] *See* L.D. Decl. at ¶¶ 1, 6.

[4] *See* McElroy Decl., Exh. B (the "Complaint") at ¶ 21.

[5] *See id.*, Exh. C ("Dismissal Order") at p. 2.

history, including the criminal activity of two of its former owners and an incident in which Customs agents discovered 16 kilograms of cocaine on a Monarch aircraft. *Id.* at pp. 4, 7. The Article included the comments of a Monarch spokesperson about these facts but also quoted certain individuals questioning the wisdom of the U.S. government contracting with Monarch for the tasks described above. *See, e.g.*, *id.* at pp. 3-4, 7.

## The Florida Litigation

In November of 2022, Monarch sued JDN and Dobrovolskaya in Florida state court for defamation and defamation by implication allegedly arising from the Article. The Florida Litigation was later removed to the U.S. District Court for the Southern District of Florida. *See* Dismissal Order at p. 2 n.3. Monarch never properly served Dobrovolskaya with process in the Florida Litigation, and she was ultimately dismissed as a party. *See* Dismissal Order; *see also* McElroy Decl., Exh. D ("Order Terminating L.D.").

Monarch and JDN have engaged in significant discovery in the Florida Litigation, including requesting and producing documents. JDN has to date produced more than 1,500 pages of documents to Monarch. *See* McElroy Decl. ¶ 12. JDN also has objected to numerous document requests from Monarch because the documents sought are not relevant, are privileged communications with JDN's lawyers, are protected work product, or are protected by the journalist's privilege (under the First Amendment, the New York journalist's privilege, and/or the Florida journalist's privilege), among other reasons. *Id.* ¶ 13. JDN also has prepared and produced detailed privilege logs to Monarch. *Id.*

Limited third-party discovery has also occurred, including Monarch issuing a document subpoena to The McClatchy Company, LLC, the publisher of The Miami Herald (the "Herald"), for certain purported pre-publication communications between the Herald and Dobrovolskaya,

among other things. *See* McElroy Decl., Exh. F ("Herald Subpoena"). The court in the Florida Litigation quashed the subpoena to the Herald because it sought information protected by the journalist's privilege. *See Monarch Air Group, LLC v. Journalism Development Network, Inc.*, No. 23-CV-61256-BECERRA/STRAUSS, 2024 WL 4826040 (S.D. Fla. Nov. 19, 2024).

## The Subpoena to Dobrovolskaya

On December 27, 2024, Monarch served the Subpoena on Dobrovolskaya in New York. *See* L.D. Decl. ¶ 2. The Subpoena originally sought 25 categories of documents. *See generally* Subpoena.[6] As a result of negotiations between counsel for Plaintiff and counsel for Dobrovolskaya, the scope of the Subpoena has been narrowed. With regard to certain topics, Dobrovolskaya has agreed to produce documents or has stated that she has no responsive documents. *See* McElroy Decl. ¶ 3.  With regard to a few other topics, however, Plaintiff continues to seek documents from Dobrovolskaya, but Dobrovolskaya objects to the topics because they seek material covered by the journalist's privilege or because they are overly broad or not relevant to the Florida Litigation.  *Id.* at ¶ 4. Those categories of documents are:

- Recordings of interviews with two confidential sources quoted in the Article;

- Pre-publication communications about the Article with the Herald (Topic 3);

- Communications with a blogger named Patrick Simpson, who has also independently published information about Plaintiff (Topic 15); and

- Documents concerning the bases for a "tweet" that Dobrovolskaya posted on November 28, 2020, concerning Plaintiff's "Mercury Jets Division" and its relationship to Plaintiff (Topic 21).

As explained below, each of these groups of documents is either protected from discovery by the journalist's privilege or is not relevant and thus not discoverable. Accordingly,

---

[6] After service of the Subpoena, Ms. Dobrovolskaya timely served objections.  Additionally, counsel for Plaintiff agreed to an enlargement of the time period within which Ms. Dobrovolskaya was required to file a motion to quash or for protective order in response to the Subpoena to Thursday, January 16, 2025.  *See* McElroy Decl. ¶¶ 2, 5.

the Subpoena should be quashed.

## DISCUSSION

I.      **To The Extent There Is Any Conflict of Law Between The New York And Florida Journalists' Privilege, New York Law Should Apply.**

As discussed below, the journalists' privileges under New York and Florida law are very similar and application of either body of law should provide the same result – *i.e.*, the Subpoena should be quashed as to the topics identified above. The only significant difference between the two is that New York provides an absolute privilege for confidential source information, while Florida provides a qualified statutory privilege.

By statute, the New York Reporters Shield Law protects journalists against intrusion into their newsgathering and reporting efforts. *See* N.Y. Civ. Rights Law § 79-h ("Section 79-h"). That statute, which stems from the First Amendment and the press clause of the New York State constitution (Art. I, § 8), provides reporters with an absolute privilege against disclosure of any information received in confidence, including the identity of confidential sources, and a qualified privilege for unpublished newsgathering material, even when it is not otherwise confidential. *In re Application to Quash Subpoena to Nat'l Broad. Co., Inc.*, 79 F.3d 346, 351 (2d Cir. 1996) (internal citations omitted); *see also Baker v. Goldman Sachs & Co*., 669 F.3d 105, 107 (2d Cir. 2012) ("New York's Shield Law provides journalists an absolute privilege from testifying with regard to news obtained under a promise of confidentiality.").

The New York shield law also provides a privilege against disclosure of non-confidential, unpublished newsgathering information unless the litigant can make a "clear and specific showing" that the information "(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source." *See* Section 79-h. Florida's shield law is very similar.

While it does not provide an absolute privilege for confidential-source information, Section 90.5015 provides that newsgathering information is privileged and need not be disclosed unless the subpoenaing party first makes a "clear and specific showing" that "(a) the information sought is relevant and material to unresolved issues [in the proceeding…]; (b) the information cannot be obtained from alternative sources; and (c) a compelling interest exists for requiring disclosure of the information." *See* Fla. Stat. § 90.5015(2) (2024).

"This qualified statutory privilege extends to both confidential and non-confidential information." *See Ulrich v. Coast Dental Servs., Inc.*, 739 So. 2d 142, 143 (Fla. Dist. Ct. App. 1999). To overcome the privilege, the party seeking the information must make a "clear and specific showing" with regard to each element of the statute and each portion of information sought to be disclosed. *See* Fla. Stat. § 90.5015(3); *see also McCarty v Bankers Ins. Co.*, 195 F.R.D. 39, 46 (N.D. Fla. 1998) ("In either [Florida or federal law], the burden rests with [the party seeking to overcome the qualified privilege] to establish each of the factors by clear and convincing evidence.").

Because Dobrovolskaya's conduct, including her newsgathering activities, all occurred in New York, the court should apply New York's choice of law rules. *Breaking Media, Inc. v. Jowers*, 21 Misc. 194 (KPF), 2021 WL 1299108, at *3 n.2 (S.D.N.Y. Apr. 7, 2021). Under New York choice of law rules, "if the outcome of the case can be determined applying only laws that are not at odds and which evidence the same underlying public policy, no conflict requiring the court to make a choice of law determination arises." *Granite State Ins. Co. v. Clearwater Ins. Co.*, No. 09 Civ. 10607(RKE), 2014 WL 1285507, at *12 (S.D.N.Y. Mar. 31, 2014).

As explained above, with regard to non-confidential information, the New York shield law and the Florida shield law are nearly identical and not in conflict. Thus, there is no need for

this Court to undertake a choice of law analysis with regard to non-confidential information. With respect to confidential-source information, however, New York and Florida law are different, but as applied to the confidential information sought by the Subpoena here, the outcome under either law should be the same. Thus, there still should be no need for this Court to undertake a choice of law analysis.

## II.    The Court Should Quash The Subpoena Because It Would Require Disclosure Of Privileged Or Other Protected Matter.

Rule 45(d)(3)(A)(iii) provides that a subpoena should be quashed when it would "require[e] disclosure of privileged or other protected information, if no exception or waiver applies." Fed. R. Civ. P. 45 (d)(3)(A)(iii). Here, information and documents obtained and created by Dobrovolskaya as a professional journalist who researched, drafted, and prepared the Article are privileged from discovery. Accordingly, the Subpoena should be quashed as to several of the topics listed above because it seeks privileged information.

### A.    The Subpoena Should Be Quashed With Regard To Confidential Source Information.

In the Article, Dobrovolskaya quotes or paraphrases statements from two confidential sources. In particular, the Article reports that in 2011, U.S. Customs agents discovered 16 kilograms of cocaine on a Monarch aircraft. It then reports information from a confidential source:

> *A former Monarch pilot*, who was not on the flight, told OCCRP the plane was searched by customs agents when it returned to Fort Lauderdale International Airport from Haiti. They found a duffle bag full of cocaine inside. The crew was detained for several hours, he said, along with the person who had chartered the flight, a frequent customer whose name he did not recall. The pilot thought it was strange that the aircraft was then released.
>
> "I've seen in previous years, when the airplane was involved with drugs and it was in a hangar and it was not to be moved," he said. "It was under the control of customs."

*See* McElroy Decl., Exh. E at p. 6 (emphasis added).

Dobrovolskaya promised confidentiality to the former Monarch pilot. *See* L.D. Decl. ¶ 7. The Article also reports information from a second confidential source, who was interviewed by Dobrovolskaya and also promised confidentiality (*see id.*):

> Between January and April 2016, Monarch's director of operations, chief pilot, and maintenance director all quit. ***A pilot who spoke to OCCRP anonymously*** said employees resigned after Monarch stopped paying them, and the airline struggled to find replacements.

*See* McElroy Decl., Exh. E at p. 8 (emphasis added).

Plaintiff's Subpoena seeks to compel Dobrovolskaya to produce the recordings, in their entirety, of her interviews with both confidential sources. All of the confidential recordings, however, are protected by the journalist's privilege. Providing the recordings to Monarch would divulge the identities of the sources because their voices are recognizable and because numerous details discussed in the interviews would make clear to the listener the identity of the person speaking.

### 1.    The Recordings Are Absolutely Privileged Under New York's Shield Law.

Under New York's shield law, Dobrovolskaya's recordings of her interviews with confidential sources are absolutely privileged. *See* Section 79-h(b). As the New York Court of Appeals has explained, "protection of the anonymity of confidential sources is a core—if not *the* central—concern underlying New York's journalist privilege, with roots that can be traced back to the inception of the press in New York." *Matter of Holmes v. Winter*, 22 N.Y.3d 300, 316 (2013) (emphasis in original). Accordingly, "there is no principle more fundamental or well-established than the right of a reporter to refuse to divulge a confidential source." *Id.* Under the New York shield law, then, the Subpoena must be quashed inasmuch as it seeks disclosure of Dobrovolskaya's recordings of her interviews with her confidential sources.

## 2.     The Recordings Also Are Privileged Under Florida's Shield Law.

Monarch may argue that Florida law applies to Dobrovolskaya's newsgathering efforts. While Dobrovolskaya disagrees, the outcome would be the same even if this Court applied Florida law. As noted above, Florida law provides that newsgathering is privileged from discovery unless the subpoenaing party first makes a "clear and specific showing" that "(a) the information sought is relevant and material to unresolved issues [in the proceeding]; (b) the information cannot be obtained from alternative sources; and (c) a compelling interest exists for requiring disclosure of the information." *See* Fla. Stat. § 90.5015(2).

With regard to the confidential-source recordings, Monarch cannot meet any of the statutory requirements to overcome the journalist's privilege. With respect to the second prong, the inquiry "is ***not*** whether the ***form*** of the evidence itself is unavailable, but, rather, whether the ***information revealed by the evidence*** is otherwise unavailable." *See United States v. Thompson*, No. 14–20522–CR, 2015 WL 1608462, at *3 (S.D. Fla. Apr. 10, 2015) (emphasis added). Thus, to satisfy this prong, Monarch would have to show, by clear and convincing evidence, that the *information* it seeks through its Subpoena cannot be obtained from other sources. In other words, the issue is not whether the recordings themselves can be obtained from other sources, but whether the information provided by the confidential sources may be obtained from sources other than Dobrovolskaya.

Here, with respect to the statement by a former pilot that, in the early part of 2016, Monarch's director of operations, chief pilot, and maintenance director resigned because they were not paid, Monarch itself is the most obvious source for records and testimony concerning that issue. Of course, Monarch's former director of operations, former chief pilot, and former maintenance director themselves would also be obvious sources of such information. Whether they resigned because Monarch failed to pay them is a question they should certainly be able to

answer. To date, however, Monarch has not deposed any of those individuals or any of its former or current employees. In fact, Monarch has not yet taken any depositions in the Florida Litigation.[7] Without having deposed any potential alternative sources, including the most obvious sources, Monarch plainly cannot show that such information is *unavailable* from alternative sources.

Similarly, Monarch has not attempted to identify or depose the former pilot who spoke about the incident where cocaine was discovered on a Monarch aircraft in 2011. Nor has Monarch deposed anyone else who might have information about that incident, including crew members, the pilot, or the passenger. At the time – in 2011 – Monarch was a small company with a small number of employees. It should be relatively easy for Monarch to identify and depose the crew members, pilot, and passenger, but Monarch has made no effort to do so. It appears that Monarch has not even attempted to informally interview these individuals.

Under these circumstances, Monarch has not come close to showing that there are no alternative sources for the information contained in the confidential recordings. *See, e.g.*, *WTVJ-NBC 6 v. Shehadeh*, 56 So. 3d 104, 106 (Fla. Dist. Ct. App. 2011) (holding that plaintiff failed to overcome journalist's privilege because there was no evidence that any alternative sources had been questioned and plaintiff had not taken advantage of the "array of discovery procedures" for seeking information from alternative sources); *Gubarev v. BuzzFeed, Inc.*, No. 1:17-cv-60426-UNGARO/O'SULLIVAN, 2017 WL 6547898, at *4 (S.D. Fla. Dec. 21, 2017) (upholding privilege and protecting identity of confidential source because "plaintiffs have not met their burden of making a clear and specific showing that the identity of the source cannot be obtained through alternative sources"). Thus, the Subpoena must be quashed with regard to the

---

[7] Monarch had scheduled the depositions of JDN's corporate representative and Andrew Sullivan for Wednesday, January 8, 2025 in Washington, DC. Those depositions were rescheduled to February 17, 2025 due to inclement weather.

confidential-source recordings.

As noted above, because the outcome would be the same under either New York or Florida law, the Court need not undertake a conflict of laws analysis. Only if this Court were to find that the confidential-source material is not protected by the Florida shield law would a conflict arise. In that unlikely event, the Court should apply New York's shield law.

Because privilege rules are conduct-regulating, New York "applies the law of the locus of the conduct at issue, because of [the locus jurisdiction's] interest in affecting the conduct of those who act within the jurisdiction and of a reliance interest on the part of actors whose conduct is at issue." *Breaking Media*, 2021 WL 1299108, at *3 n.2 (internal quotations omitted); *see also Stephens v. Am. Home Assurance Co.*, No. 91Civ2898 (JSM) (KAR), 1995 WL 230333, at *7 (S.D.N.Y. Apr. 17, 1995) (same).

Here, the matters sought to be discovered stem from conduct based in New York: Dobrovolskaya resided in New York, interviewed the confidential sources while she was in New York (via telephone), and drafted the Article in New York. *See* L.D. Decl. ¶¶ 1, 6. It is well established, of course, that New York has a "strong interest in protecting the activities of its domiciliary news publishers through application of its privilege law." *Breaking Media*, 2021 WL 1299108, at *3 n.2.  Because of New York's interest in affecting the conduct of those within its jurisdiction (*i.e.*, Dobrovolskaya) and because Dobrovolskaya – whose conduct is at issue – was in New York when she promised confidentiality to her sources, New York law should govern her claims of privilege in this matter. New York's absolute privilege for confidential source material mandates quashing the Subpoena.

## B.    The Subpoena Should Be Quashed With Respect To Dobrovolskaya's Communications With The Miami Herald.

Topic 3 of the Subpoena seeks communications between Dobrovolskaya and the Herald

about the Article. *See* Subpoena at p. 6 ¶ 3. These communications – between a professional journalist and a Florida newspaper about a potential news story – are undoubtedly protected by the journalist's privilege, as the Magistrate Judge in the Florida Litigation has already determined.

Just a few months ago, on October 31, 2024, Monarch served a third-party document subpoena on the Herald's parent company, the McClatchy Company, LLC, seeking these very same materials. *See* Herald Subpoena at p. 6.  In particular, the Herald Subpoena sought, among other things, all documents and communications between Dobrovolskaya and the Herald concerning Monarch and all documents and communications concerning the Herald's purported decision not to publish the Article. *See id.* ¶¶ 3-4. Those same documents are sought by the Subpoena here.

In response to the subpoena, the Herald moved to quash, relying upon the Florida statutory journalist's privilege, the First Amendment, and Florida common law. *Monarch*, 2024 WL 4826040, at *1. The presiding Magistrate Judge granted that motion and quashed the subpoena. According to the court, Monarch "failed to make the requisite showing to overcome the qualified privilege under the First Amendment and Florida law." *Id.* at *2. In particular, Monarch "failed to show that the information sought is highly relevant." *Id.* It also "failed to show that the information sought is unavailable – or cannot be obtained from – other sources." *Id.* at *3. As the court explained, "it is not whether the form of evidence itself is unavailable but, rather, whether the information revealed by the evidence is otherwise unavailable." *Id.* Based upon these failings, the court quashed the subpoena. *Id.*

The same analysis applies with regard to the Subpoena addressed to Dobrovolskaya. Most critically, Monarch has not shown that the information sought by the Subpoena is highly

relevant. As the Florida court explained, Monarch **asserts** that Dobrovolskaya "pitched the article to The Miami Herald, which ultimately declined to publish it." *Monarch*, 2024 WL 4826040, at *2. Based upon this assertion, Monarch apparently believes that Dobrovolskaya possesses written communications in which the Herald stated that it would not publish the Article because it contained false information, and that those written communications will show that JDN, the Defendant in the Florida Litigation, knew or should have known that the Article contained false information. *Id.* In Monarch's view, this makes the communications highly relevant.

But the Florida court rejected Monarch's theory, noting first that it was based solely on hearsay, and then explaining that:

> even assuming that it is true that The Miami Herald was initially going to publish the article but ultimately decided otherwise, Plaintiff solely offers speculation as to why The Miami Herald declined to publish the article. Plaintiff claims it has a "justifiable belief" that The Miami Herald declined to publish the article because it contained falsities, but Plaintiff fails to explain the basis for its "justifiable belief." Ultimately, Plaintiff has failed to show that its contention that the information sought is "highly relevant" (or relevant and material) is supported by anything **other than speculation**. And speculation does not cut it, particularly when Plaintiff bears a "heavy burden" of satisfying this element by "clear and convincing evidence." *See* [*United States v.*] *Thompson*, 2015 WL 1608462, at *2 [(S.D. Fla. Apr. 10, 2015)].

*Id.* (emphasis added).

The same analysis applies here, whether Florida or New York law applies. Monarch **hopes** that Dobrovolskaya's written communications that will show the Herald rejected the Article because it believed that the Article contained false information, but that hope alone is not sufficient to render the documents "highly relevant" as required before the journalist's privilege may be overcome.

Moreover, to overcome New York's privilege, Monarch must show that obtaining access to the communications with the Hearld is "critical or necessary to the maintenance of [Monarch's] claim." *See* Section 79-h(c). This means that Monarch's claims must "rise or fall"

based upon those communications. *Baker*, 669 F.3d at 108. To overcome Florida's privilege, Monarch must likewise show that "a compelling interest exists for requiring disclosure of the information," Fla. Stat. § 90.5015(2), which means that Monarch that "cannot otherwise establish [its] entitlement to relief" without the information. *McCarty*, 195 F.R.D. at 47. Thus, both New York and Florida law require Monarch to prove that Herald communications with Ms. Dobrovolskaya are essential to the viability of its claims. But Monarch cannot come close to meeting that standard.  Thus, even if, as Monarch speculates, the Herald had told Dobrovolskaya in writing that it questioned the truth of the Article, such a hypothetical communication would not establish anything about JDN's alleged knowledge of falsity (*i.e.*, actual malice) and thus would not be essential to Monarch's ability to prove its claims against JDN.

For all of these reasons, the Subpoena should be quashed with regard to Topic 3.

### C.    The Subpoena Should Be Quashed With Respect To Dobrovolskaya's Communications With Patrick Simpson.

In Topic 15, the Subpoena seeks Dobrovolskaya's communications with an individual named Patrick Simpson. *See* Subpoena at p. 7 ¶ 15.  Simpson is a blogger who published an article about Monarch before Dobrovolskaya wrote, and JDN published, the Article. *See* L.D. Decl. ¶ 8. Dobrovolskaya was aware of Simpson's blog posts and communicated with him about his research related to Monarch before publishing the Article. *Id.*

Because Dobrovolskaya's communications with Simpson were part of her newsgathering efforts, they are protected from discovery by the journalist's privilege. For a variety of reasons, Monarch has no basis for overcoming the privilege with regard to these communications. First, under either New York or Florida law, the communications are not highly relevant and material to Monarch's claims. The original Article published by JDN did not even *mention* Simpson. *See* Complaint, Exh. A. As discovery between Monarch and JDN has established, JDN added a link

to Simpson's article about Monarch after Simpson complained that he was not given credit for his reporting. Specifically, JDN revised the Article to include a single parenthetical mention of Simpson and a link to his blog, as follows:

> Monarch has carried out various tasks for U.S. authorities, including carrying protected witnesses for the Marshals Service and transporting fuel in Israel for the Department of Defense (DoD). (The witness-protection contracts were <u>first reported</u> by blogger Patrick Simpson last year.) One of its affiliates, WAB International, also subcontracted jobs transporting passengers and cargo for the DoD in Afghanistan.

*See* McElroy Decl., Exh. E at p. 1.

The Complaint does *not* allege that these statements are false, or defamatory, or otherwise actionable. As a result, any communications between Simpson and Dobrovolskaya simply have no bearing on the claims that Monarch has asserted against JDN. Since they are not even relevant to Monarch's claims, by definition they cannot be "highly relevant and material" to those claims. Because they are not, the journalist's privilege cannot be overcome. *Thompson*, 2015 WL 1608462, at *2 (quashing subpoena because, among other things, information sought was not highly relevant and material to underlying claim).

Likewise, under New York law, the communications with Simpson are not critical or necessary to the maintenance of Monarch's defamation claims. Indeed, to overcome the New York shield law, Monarch would have to show that its case "rises or falls with the admission or exclusion of the proffered evidence." *Baker*, 669 F.3d at 108 (internal quotation omitted). "The test is not merely that the material be helpful or probative, but whether or not . . . the action may be presented without it." *Id.* (internal quotation omitted).

Similarly, under Florida law, Monarch must show a "compelling interest" that would require disclosure of the information, Fla. Stat. § 90.5015(2), which means Monarch must show that it "cannot otherwise establish [its] entitlement to relief" on its claims without the

information. *McCarty*, 195 F.R.D. at 47. Since the Simpson communications have nothing to do with Monarch's defamation claims, it is obvious that the viability of those claims is not contingent upon obtaining the Simpson communications. Because Monarch cannot meet these requirements, it cannot overcome the New York or Florida journalist's privilege.

Finally, Monarch has an obvious alternative source for any information shared between Simpson and Dobrovolskaya – it can depose Patrick Simpson. As noted above, however, Monarch has not deposed anyone in the Florida Litigation. Without having pursued such discovery, Monarch plainly cannot make a "clear and specific showing" that there are no alternatives for obtaining the information other than from obtaining it from Dobrovolskaya, a professional journalist. Again, for this reason, the Subpoena should be quashed.

### D.     The Subpoena Should Be Quashed With Respect To Documents Relating to Dobrovolskaya's Tweet About Monarch's "Mercury Jets Division."

When Monarch filed its original lawsuit in Florida, Dobrovolskaya was a Defendant and Count III of the Complaint was directed solely against her. *See* Complaint at p. 10.  In particular, Count III claimed that, in November of 2020, Dobrovolskaya posted a false and defamatory tweet stating: "Monarch has a division called Mercury Jets which has no legal presence in the U.S.  Mercury's website domain info shows it was registered by an eponymous company in Moscow and lists a contact email address of a Moscow-based commercial bank Sibcontact bank" (the "Mercury Jets Tweet"). *Id.* ¶ 64, Exh. E. Ultimately, Dobrovolskaya and Count III were dismissed from the Florida Litigation. *See* Dismissal Order at 10, 13-14; Order Terminating L.D.

Nevertheless, Topic 21 of the Subpoena seeks documents concerning the bases for the Mercury Jets Tweet and documents about any relationship between Monarch and the Mercury Jets Division. *See* Subpoena at p. 8 ¶ 21. To the extent that Dobrovolskaya has any responsive documents, they were gathered or created in the context of her preparing the Article and

reporting on Monarch's business, and thus they are protected by the journalist's privilege. *See* L.D. Decl. ¶ 9.

Monarch cannot possibly overcome the journalist's privilege with regard to Topic 21. As noted above, Dobrovolskaya was dismissed from the Florida Litigation and there is now no pending claim in the Florida Litigation against Dobrovolskaya or relating to the Mercury Jets Tweet. Monarch's remaining claims against JDN are not based in any manner on the Mercury Jets Tweet.

Moreover, because the Mercury Jets Tweet was published more than four years ago, Monarch could not now attempt to bring a new defamation claim against Dobrovolskaya based upon it. This is so because the statute of limitations for defamation in Florida is two years, and in New York, is one year. Fla. Stat. § 95.11(5)(h); N.Y. Civ. Rights Law § 215(3). Thus, a potential defamation claim based upon the Mercury Jets Tweet would be time-barred.

In addition, Mercury Jets is never mentioned in the Article and, accordingly, Monarch's defamation claims against JDN are not premised in any fashion upon any statement about Mercury Jets. Mercury Jets, and Dobrovolskaya's tweet about Mercury Jets, have no bearing on any issue in dispute in the Florida Litigation.

Given this complete lack of relevance, Monarch plainly cannot show that documents related to the Mercury Jets Tweet are "highly relevant and material" to its claims. It also cannot possibly show that its pending claims "rise or fall" based upon anything having to do with the Mercury Jets Tweet. *Baker*, 669 F.3d at 108; *see also McCarty*, 195 F.R.D. at 47. Nor can Monarch show that such documents are critical or necessary to the maintenance of Monarch's defamation claims (as would be required to overcome the journalist's privilege under New York law), or that there is a compelling interest requiring disclosure of the communications (as would

be required to overcome the journalist's privilege under Florida law). *Id.* As a result, the Subpoena should be quashed as to Topic 21.

### III.    The Court Should Quash The Subpoena Because It Seeks Documents That Are Not Relevant.

Rule 45 provides that a subpoena should be quashed when it would "subject a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Moreover, subpoenas issued under Rule 45 "are subject to the relevance requirement of Rule 26(b)(1)." *Breaking Media*, 2021 WL 1299108, at *5 (internal quotation omitted).  Here, to the extent the Subpoena seeks material that is not relevant to Monarch's claims, it imposes an undue burden on Dobrovolskaya and should be quashed.

As explained above, Monarch cannot show that Dobrovolskaya's communications with the Herald or Patrick Simpson, or any documents she has related to the Mercury Jets Tweet, are relevant to Monarch's remaining defamation claims. Because the material sought "is not relevant to any claim or defense" in the Florida Litigation, and because – as explained above – Monarch has "failed to take any reasonable steps to obtain the information through other means," Monarch has not taken reasonable steps "to avoid imposing an undue burden" on Dobrovolskaya, as required by Rule 45(d)(1). *Breaking Media*, 2021 WL 1299108 at *7. Therefore, in addition to the fact that such irrelevant materials are protected by the journalist's privilege, requiring their production would place an undue burden on Dobrovolskaya as a non-party to the Florida Litigation. For this additional reason, the Subpoena should be quashed.

### <u>CONCLUSION</u>

WHEREFORE, Lily Dobrovolskaya respectfully requests that the Court grant her Motion to Quash, quash the Subpoena, and grant such other relief as the Court deems necessary.

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 5,627 words.

I certify under penalty of perjury that the foregoing is true and correct.

DAVIS WRIGHT TREMAINE LLP

By: */s/ Rachel Strom*
Rachel Strom
rachelstrom@dwt.com
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone (212) 402-4069

THOMAS & LoCICERO PL

Dana J. McElroy (*pro hac vice forthcoming*)
Florida Bar No. 845906
dmcelroy@tlolawfirm.com
915 Middle River Drive, Ste. 309
Fort Lauderdale, FL 33304
Telephone (954) 703-3416

James J. McGuire (*pro hac vice forthcoming*)
Florida Bar No. 187798
jmcguire@tlolawfirm.com
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060

*Attorneys for Non-Party Lily Dobrovolskaya*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this **16th** day of **January, 2025**, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties and counsel of record via electronic mail and U.S. mail to attorneys for Monarch Air Group, LLC, Joshua R. Kon, Esq., jkon@stoklaw.com; Yosef Y. Kudan, Esq., ykudan@stoklaw.com; of Stok Kon+Braverman, One East Broward Boulevard, Suite 915, Fort Lauderdale, Florida 33301.

*/s/ Rachel Strom*
Attorney
