**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LILY DOBROVOLSKAYA,<br><br>Movant,<br><br>v.<br><br>MONARCH AIR GROUP, LLC.,<br><br>Respondent. | Case No.: 25-mc-00032 (JLR)<br><br>[Related to Case No. 23-cv-61256-JB pending in the Southern District of Florida] |

**NON-PARTY LILY DOBROVOLSKAYA'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA**

DAVIS WRIGHT TREMAINE LLP

By: */s/ Rachel Strom*
Rachel Strom
rachelstrom@dwt.com
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Telephone (212) 402-4069

THOMAS & LoCICERO PL

Dana J. McElroy (*admitted pro hac vice*)
Florida Bar No. 845906
dmcelroy@tlolawfirm.com
915 Middle River Drive,
Suite 309
Fort Lauderdale, FL 33304
Telephone (954) 703-3416

James J. McGuire (*admitted pro hac vice*)
Florida Bar No. 187798
jmcguire@tlolawfirm.com
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ... ii

TABLE OF AUTHORITIES ... iii

Argument ... 1

I. To The Extent There Is A Conflict Of Law, New York Law Applies ... 1

A. Because The Recordings Are Protected Under Both New York And Florida Law, There Is No Conflict Of Law ... 2

1. The Cocaine Incident Recording Is Privileged ... 2

2. The Resignation Recording Is Privileged ... 4

B. Should The Court Find A Conflict, New York Law Applies ... 6

II. Dobrovolskaya's Communications With The Miami Herald (Topic 3) Are Privileged ... 8

III. Dobrovolskaya's Communications With Patrick Simpson (Topic 15) Are Privileged ... 9

IV. Documents Relating To The Mercury Jets Tweet (Topic 21) Are Privileged ... 11

CONCLUSION ... 11

CERTIFICATE OF COMPLIANCE ... 12

CERTIFICATE OF SERVICE ... 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Baker v. Goldman Sachs & Co.*, 669 F.3d 105 (2d Cir. 2012) ..................... 1

*Berwick v. New World Network, Int'l*, No. 06 Civ. 2641(JGK), 2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) ..................... 7

*Breaking Media, Inc. v. Jowers*, 21 Misc. 194 (KPF), 2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021) ..................... 6

*Cable News Network, Inc. v. Black*, 308 So. 3d 997 (Fla. 4th DCA 2020) ..................... 5

*Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110 (S.D. Fla. 2021) ..................... 11

*Cummins v. Suntrust Capital Markets, Inc.*, 649 F. Supp. 2d 224 (S.D.N.Y. 2009) ..................... 7

*Dockery v. Fla. Democratic Party*, 799 So. 2d 291 (Fla. 2d DCA 2001) ..................... 11

*Gubarev v. BuzzFeed, Inc.*, No. 1:17-cv-60426-UNGARO/O'SULLIVAN, 2017 WL 6547898 (S.D. Fla. Dec. 21, 2017) ..................... 3, 4, 9

*Holmes v. Winter*, 22 N.Y.3d 300 (2013) ..................... 8

*Kesner v. Dow Jones & Co., Inc.*, 515 F.Supp. 3d 149 (S.D.N.Y. 2021) ..................... 7

*La Luna Enter., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384 (S.D.N.Y. 1999) ..................... 7

*Monarch Air Group, LLC v. Journalism Development Network, Inc.*, No. 23-CV-61256-BECERRA/STRAUSS, 2024 WL 4826040 (S.D. Fla. Nov. 19, 2024) ..................... 4, 8, 9

*NewYork Times Co. v. Sullivan*, 376 U.S. 254 (1964) ..................... 4

*Price v. Time, Inc.*, 416 F.3d 1327 (11th Cir. 2005) ..................... 3, 4

*Sharon v. Time, Inc.*, 599 F. Supp. 538 (S.D.N.Y. 1984) ..................... 7, 8

*Stephens v. Am. Home Assur. Co.*, No. 91Civ2898 (JSM) (KAR), 1995 WL 230333 (S.D.N.Y. Apr. 17, 1995) ..................... 6

*Ulrich v. Coast Dental Servs., Inc.*, 739 So.2d 142 (Fla. Dist. Ct. App. 1999) ..................... 1

*United States v. Thompson*, No. 14–20522–CR, 2015 WL 1608462 (S.D. Fla. Apr. 10, 2015) ..................... 9

**Statutes**

Fla. Stat. § 90.5015(2)........................................................................................................ 1

N.Y. Civ. Rights Law § 79-h ................................................................................................ 1

Under either New York or Florida law, a journalist's unpublished newsgathering information is privileged from discovery unless the requesting party makes a "clear and specific showing" that the information (i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense, or proof of a material issue; and (iii) is not obtainable from any alternative source. *See* N.Y. Civ. Rights Law § 79-h; Fla. Stat. § 90.5015(2).

In its Response in Opposition to Lily Dobrovolskaya's Memorandum in Support of Motion to Quash Subpoena (the "Opposition") [ECF No. 12], Monarch pays lip service to this 3-part test. *See* Opposition at 4-8. But when it comes to addressing the specific categories of documents Monarch has subpoenaed, Monarch largely disregards the test because Monarch cannot satisfy it. Accordingly, the Subpoena should be quashed.

## Argument

### I. To The Extent There Is A Conflict Of Law, New York Law Applies.

As noted in Non-Party Lily Dobrovolskaya's Memorandum in Support of Motion to Quash the Subpoena (ECF No. 3; the "Motion to Quash"), the journalist's privilege is treated nearly identically under either New York or Florida law, with the exception of its application to confidential sources. "New York's Shield Law provides journalists an absolute privilege from testifying with regard to news obtained under a promise of confidentiality." *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 107 (2d Cir. 2012). Florida, by contrast, provides a qualified privilege, which is assessed under the 3-part test discussed above. *Ulrich v. Coast Dental Servs., Inc.*, 739 So. 2d 142, 143 (Fla. Dist. Ct. App. 1999).

Monarch erroneously contends that this matter is governed by Florida law, but the issue is relevant only with respect to the Subpoena's request for recordings of interviews with confidential sources. For the remaining Subpoena topics, the analysis is the same under New York or Florida law.

### A. Because The Recordings Are Protected Under Both New York And Florida Law, There Is No Conflict Of Law.

Under Florida law, Monarch cannot carry the heavy burden of making a "clear and specific showing" that it satisfies all prongs of the 3-part journalist's privilege test. As explained in the Motion to Quash, one of the confidential recordings is an interview of a former Monarch pilot about the discovery of 16 kilograms of cocaine in a passenger's duffle bag on a Monarch aircraft (the "Cocaine Incident Recording"). Motion to Quash at 7-8. The second confidential recording is an interview of a former Monarch pilot who said that Monarch's chief pilot, director of operations, and maintenance director all resigned in 2016 because Monarch did not pay them (the "Resignation Recording"). *Id.* at 8. As explained below, both Recordings are privileged under Florida law. As a result, they are also privileged under New York's absolute privilege for confidential sources.

#### 1. The Cocaine Incident Recording Is Privileged.

Monarch provides no coherent explanation for why the Cocaine Incident Recording meets the first two prongs of the test: that (1) it is highly relevant and (2) Monarch cannot prove its case – or overcome JDN's defenses – without it. To be clear, Monarch's Complaint does *not* allege that the confidential source's statements about the Cocaine Incident are false. Instead, the Complaint alleges that JDN *manipulated and presented* the Cocaine Incident in such a way as to create the false implication that Monarch – rather than the passenger – was involved in smuggling drugs. According to the Complaint, prior to the Article's publication, Monarch provided a statement to JDN about the Cocaine Incident, saying that "a charter passenger was apprehended by the U.S. Customs and Border Protection for items in his personal possession." [ECF No. 5-2, at p. 7, ¶ 39]. The Complaint alleges, however, that JDN misused Monarch's own statement to create a false implication:

> 40. Despite Monarch's statement, [JDN] *changed Monarch's response* to obfuscate that the cocaine was in a passenger's personal possession and instead wrote that 'Monarch's spokesperson said that the cocaine belonged to a passenger.'
>
> 41. [JDN's] statement still connotes that Monarch was involved in the drug smuggling, and that the cocaine happened to belong to a passenger. Thus, not only is [JDN's] narrative of events defamatory, their *misquoting Monarch's spokesperson* is defamatory . . . .

[*Id.* ¶¶ 40, 41 (emphasis added)]

Accordingly, Monarch's claim concerning the Cocaine Incident is based solely upon JDN's alleged misquoting or mischaracterizing of Monarch's spokesperson's statement, not on anything contained in the Cocaine Incident Recording. Thus, the information contained in that Recording is not "highly relevant" to Monarch's claims and is not necessary for Monarch to establish its claim or defeat JDN's defense, as required under the first two prongs of the test.

Likewise, Monarch cannot satisfy the third prong because it has not sought information about what the confidential source said to Dobrovolskaya from any alternative sources, such as the former Monarch pilot referenced in the Article. Without having done so, Monarch cannot overcome Florida's journalist's privilege as a matter of law. *See Gubarev v. BuzzFeed, Inc.*, No. 1:17-cv-60426-UNGARO/O'SULLIVAN, 2017 WL 6547898, at *4 (S.D. Fla. Dec. 21, 2017) (plaintiffs who failed to depose possible alternative sources of information could not overcome privilege); *see also Price v. Time, Inc.*, 416 F.3d 1327, 1347 (11th Cir. 2005) (same). And since New York's privilege concerning confidential sources is an absolute privilege, Monarch obviously cannot overcome New York's privilege either.

**2. The Resignation Recording Is Privileged.**

Inasmuch as Monarch seeks the Resignation Recording to investigate whether it is true that Monarch's chief pilot, maintenance director, and director of operations resigned because Monarch failed to pay them, Monarch has obvious alternative sources for such information,

including its own files, accounting records, and, most critically, testimony from the individuals who resigned. But because Monarch has not deposed any of them, it cannot overcome the privilege. *Gubarev*, 2017 WL 6547898, at *4.

To the extent that Monarch seeks the Resignation Recording to show JDN's state of mind when it published the Article, Monarch still cannot carry its burden. First, if Monarch seeks to prove what Dobrovolskaya learned from the confidential source, it has alternative sources for that information, as explained above. Second, insofar as Monarch contends Dobrovolskaya's state of mind is critical information needed by Monarch, *see* Opposition at 11, Monarch is mistaken. The only relevant state of mind is JDN's. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 287-88 (in defamation actions, alleged falsity must be "brought home" to those actually responsible for publication).[1] Here, Monarch is simply guessing that the Recording has some relevance to JDN's state of mind at the time of publication. But mere conjecture is not sufficient under Florida law, as the Florida Magistrate has already ruled. *See Monarch Air Grp., LLC v. Journalism Dev. Network, Inc.*, No. 23-CV-61256-BECERRA/STRAUSS, 2024 WL 4826040, at *2 (S.D. Fla. Nov. 19, 2024) (holding that Monarch failed the first prong of test by speculating what a newspaper's records *might* show, because "speculation does not cut it").

Monarch also places great reliance on *Cable News Network, Inc. v. Black*, 308 So. 3d 997 (Fla. 4th DCA 2020), but it misreads the case. For example, Monarch states that, under *Black*, the compelling interest prong of the 3-part test is always satisfied and the privilege "must give way, including for confidential source information" because proving the publisher's state of mind would otherwise be impossible. Opposition at 8-9. But *Black* says no such thing. Instead of

[1] Monarch's opposition also misstates the facts concerning the Recordings. *See* Opposition at 10-11; Exh. 3. As Monarch's counsel is fully aware, JDN has disclosed that it has excerpts of the confidential source recordings, which are the subject of a pending motion to compel by Monarch in the Florida Litigation.

declaring the test always satisfied in defamation actions, the *Black* court applied the 3-part test and found that the facts in that case were sufficient to overcome the privilege. But the facts here are different from *Black*. Most critically, before challenging CNN's claim of privilege with respect to communications between CNN and a key source for an allegedly defamatory news story, the *Black* plaintiff *deposed the source*, who testified that "she could not recall any specific details of the communications." *Id.* at 999. Thus, the plaintiff did precisely what the law requires and what Monarch *refuses* to do here – he deposed potential alternative sources.

Moreover, the communications at issue in *Black* were directly between the source and CNN, which was both the publisher of the allegedly defamatory news story and the defendant in the defamation action. *Id.* at 998, 1001. Here, by contrast, Dobrovolskaya is not a defendant in the Florida Litigation and is not the publisher of the Article. Thus, her mental state is not an issue that must be proven in the Florida Litigation, let alone an issue that is so crucial that the viability of Monarch's claim depends upon it. Accordingly, applying the *Black* rationale, Monarch cannot satisfy the 3-part test because it simply cannot show that the information in the Resignation Recording is highly relevant, essential to Monarch proving its claims, and unavailable from other sources. Thus, the Subpoena should be quashed.

**B. Should The Court Find A Conflict, New York Law Applies.**

The Court need not consider whether a conflict of law exists unless the Court finds that Monarch has satisfied the 3-part test to overcome the journalist's privilege in connection with the confidential-source Recordings. In that event, however, the conflict-of-law analysis requires the application of New York law.

As the Motion to Quash shows, Dobrovolskaya's relevant conduct, including her newsgathering activities, all occurred in New York: she resided in New York, interviewed (via

telephone) the confidential sources and promised confidentiality while she was in New York, and drafted the Article in New York. [*See* ECF No. 6, ¶¶ 1, 6] Accordingly, Dobrovolskaya's conduct is protected by New York's journalist's privilege.

When assessing conflict-of-law issues, New York treats privilege rules as conduct-regulating rules and "applies the law of the locus of the conduct at issue, because of [the locus jurisdiction's] interest in affecting the conduct of those who act within the jurisdiction and of a reliance interest on the part of actors whose conduct is at issue." *Breaking Media, Inc. v. Jowers*, 21 Misc. 194 (KPF), 2021 WL 1299108, at *3 n.2 (S.D.N.Y. Apr. 7, 2021) (internal quotations omitted); *see also Stephens v. Am. Home Assurance Co.*, No. 91Civ2898 (JSM) (KAR), 1995 WL 230333, at *7 (S.D.N.Y. Apr. 17, 1995) (same). Given the locus of her conduct and New York's "strong interest in protecting the activities of its domiciliary news publishers through application of its privilege law," New York law applies to the Subpoena. *Breaking Media*, 2021 WL 1299108, at *3 n.2.

Monarch's argument that Florida law applies is wrong for a variety of reasons. First, Monarch confuses the legal issues, arguing that defamation rules are conduct-regulating rules, and that since the alleged defamation here was directed at a Florida company, this Court should apply Florida law. Opposition at 4. If Monarch's defamation claims against JDN were pending in this Court, the Court might very well decide that Florida defamation law applied to those claims. But the issue being litigated here is not Monarch's *defamation claim* against JDN, it is Dobrovolskaya's invocation of the journalist's privilege. As noted above, New York views privilege rules as conduct regulating, and thus focuses on the place of conduct of Dobrovolskaya, the person invoking the privilege. Since this Court is being asked to adjudicate Dobrovolskaya's claim of privilege, New York law governs.

Monarch muddles this issue by citing conflict-of-law cases focused on which forum's law applies to the *underlying defamation claim*, not on which forum's law applies to a journalist's privilege claim. *See* Opposition at 4-5 (citing *Kesner v. Dow Jones & Co., Inc.*, 515 F.Supp. 3d 149 (S.D.N.Y. 2021) (not addressing journalist's privilege issue, but instead deciding which forum's law applied to substantive defamation claim); *Cummins v. Suntrust Capital Markets, Inc.*, 649 F. Supp. 2d 224 (S.D.N.Y. 2009) (same); *La Luna Enter., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384 (S.D.N.Y. 1999) (same); *Berwick v. New World Network, Int'l*, No. 06 Civ. 2641(JGK), 2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) (same)). By contrast, *Breaking Media* and *Stephens* actually apply conflict-of-laws rules to determine which forum's journalist's privilege law applies. Those cases mandate the application of New York law here.

Monarch also misstates the facts, repeatedly trying to suggest a greater to connection to Florida by asserting that JDN's allegedly defamatory statements were "directed at" multiple parties in Florida, namely "a Florida company and individuals." *See* Opposition at 2, 4, 6. This is not true. There are no individual plaintiffs in the Florida Litigation, only Monarch, a limited liability company. Moreover, Monarch's defamation claim is against JDN, not Dobrovolskaya. Dobrovolskaya did not publish the Article in Florida, only JDN did.

In sum, should this Court need to undertake a conflict-of-law analysis, New York law applies and renders both confidential Recordings absolutely privileged. *See, e.g.*, *Matter of Holmes v. Winter*, 22 N.Y.3d 300, 316 (2013). Monarch's citation to *Sharon v. Time, Inc.* for the proposition that the court rejected "absolute immunity under the New York Shield Law" for confidential sources in a defamation case against a media defendant is a complete misrepresentation of the court's analysis. *See* Opposition at 6-7. In fact, that court rejected Time's argument that it was entitled to "absolute immunity" from liability *because* the

statements at issue concerned "the official conduct of high government officers." 599 F. Supp. 538, 554 (S.D.N.Y. 1984). The court did not reject the invocation of the journalist's privilege.

## II. Dobrovolskaya's Communications With The Miami Herald (Topic 3) Are Privileged.

Monarch goes to great lengths to convince this Court that the communications it seeks between Dobrovolskaya and the Miami Herald are somehow different from the communications sought from the Herald in the Florida Litigation. Opposition at 13. But there is no difference. Monarch seeks the same documents here that it subpoenaed in the Florida Litigation, documents purportedly showing that the Herald planned to publish the Article but then declined because it questioned the Article's truthfulness.

The Florida Court already ruled that the Herald's communications with Dobrovolskaya are protected by the journalist's privilege. Among other things, the Florida Magistrate found that Monarch's contention that the Herald was initially intending to publish the Article was based on mere hearsay, not the "clear and specific" evidentiary showing needed to overcome the journalist's privilege. *Monarch*, 2024 WL 4826040, at *2. This remains true here – Monarch has not offered any substantive evidence that the Herald ever intended to publish the Article. Moreover, at the risk of repeating the Motion to Quash, the Florida Magistrate specifically ruled that,

> even assuming that it is true that The Miami Herald was initially going to publish the article but ultimately decided otherwise, Plaintiff solely offers speculation as to why The Miami Herald declined to publish the article. Plaintiff claims it has a "justifiable belief" that The Miami Herald declined to publish the article because it contained falsities, but Plaintiff fails to explain the basis for its "justifiable belief." Ultimately, Plaintiff has failed to show that its contention that the information sought is "highly relevant" (or relevant and material) is supported by anything other than speculation. And speculation does not cut it, particularly when Plaintiff bears a "heavy burden" of satisfying this element by "clear and convincing evidence." *See* [*United States v.*] *Thompson*, 2015 WL 1608462, at *2 [(S.D. Fla. Apr. 10, 2015)].

*Id.*

The same analysis applies here. Monarch still has not provided any evidence for its belief that the Herald declined to publish the Article and did so because it contained falsities. And, of course, Monarch offers no explanation for why this Court should second guess the Florida Court, which undoubtedly has greater familiarity with the relevant legal issues and disputes in the Florida Litigation, and with the question of whether evidence relating to the Herald is "highly relevant" or critical to the viability of Monarch's claims there.

## III. Dobrovolskaya's Communications With Patrick Simpson (Topic 15) Are Privileged.

Monarch cannot meet the 3-part test to overcome the privilege with respect to Dobrovolskaya's communications with Patrick Simpson. Most critically, Monarch cannot show that no alternative sources exist for the information because Monarch has not deposed Simpson. For that reason alone, Monarch cannot overcome the privilege, and the Subpoena should be quashed. *Gubarev*, 2017 WL 6547898, at *4.

Moreover, Simpson's communications are neither "highly relevant" nor essential to Monarch's ability to prove its claims. Monarch's Complaint alleges that only two statements in the Article are literally false and defamatory. Those statements come from (1) a former Monarch pilot who said that employees resigned in 2016 because they were not being paid and (2) Paul Slavin, the founder of Monarch, who said that he left the company when he felt that the new owners were cutting corners on safety. [ECF No. 5-2, at p. 8, ¶¶ 45.a, 45.c] Simpson obviously has nothing to do with these statements.

Monarch's Complaint also alleges that JDN committed defamation by implication, meaning it published truthful information about Monarch, but arranged it in a manner, or left out exonerating information, such that the Article falsely implied that Monarch in 2020 was associated with criminals or criminal activity. According to the Complaint, Monarch achieved

this false implication primarily in two ways, neither of which has anything to do with Simpson. First, according to the Complaint, by discussing in detail the criminal backgrounds and convictions of two of Monarch's *former* owners, the Article falsely implied that Monarch was *presently* (in 2020, at the time of publication) associated with criminals. [*Id.* at pp. 7-8, ¶¶ 42-44] In reality, however, the Article implies no such thing and expressly states, at least eight times, that the two criminals ceased to be owners in 2012. [*Id.* at 15-26] Whether those eight express statements were sufficient to make clear to readers that JDN was not suggesting an association with criminals in 2020 is a matter for the Florida Court to decide but plainly has no connection to Simpson's communications with Dobrovolskaya. Thus, they are not "highly relevant" or critically necessary to Monarch's claims.

Second, the Article quoted a federal prosecutor's statement in a bail hearing (for one of Monarch's former criminal owners), asserting that the prosecution did not believe Monarch was a "legitimate" company. The Complaint alleges that the JDN failed to report that the prosecutor later withdrew and apologized for that statement. (This is not true; the prosecutor never withdrew or apologized for the statement.) According to the Complaint, the Article thus falsely implied that Monarch was an illegitimate company because it omitted the prosecutor's exonerating statement. [*Id.* at pp. 5-6, ¶¶ 35-36] Once again, this theory has absolutely nothing to do with Simpson or his communications with Dobrovolskaya. Therefore, those communications are not "highly relevant" or critically necessary to Monarch's claims. For this additional reason, Monarch cannot overcome the journalist's privilege.

## IV. Documents Relating To The Mercury Jets Tweet (Topic 21) Are Privileged.

Monarch's argument about why documents relating to Dobrovolskaya's Mercury Jets Tweet are not privileged make no sense. The key facts relating to the Mercury Jets Tweet are not in dispute. First, Dobrovolskaya authored and published the Mercury Jets Tweet. JDN did not

publish it. Thus, whatever Dobrovolskaya's thought process, or whatever information she relied upon when crafting the Tweet, it simply is not relevant to Monarch's defamation claims against JDN arising from the Article. *See, e.g.*, *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1122 (S.D. Fla. 2021) (explaining that actual malice is a subjective inquiry, focused on the *defendant's* state of mind when publishing the defamatory material).

Second, Dobrovolskaya published the Mercury Jets Tweet after JDN published the Article. As a matter of common sense, and as a matter of law, Dobrovolskaya's later Mercury Jets Tweet is not probative of *JDN's state of mind* at the time it published the Article. *See, e.g.*, *Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 294 (Fla. 2d DCA 2001) (to prove actual malice, plaintiff must prove what the defendant believed "at the time [the challenged statements] were made").

Third, the Mercury Jets Tweet is not about any of the facts or information reported in the Article. Thus, the notion that it is somehow "highly relevant" to Monarch's claims and that Monarch's claims "rise or fall" based on information about the Tweet is nonsensical. Indeed, it is not surprising that the Opposition cites no case law supporting Monarch's argument, because there is no case law supporting Monarch's untenable position.

## **Conclusion**

WHEREFORE, Lily Dobrovolskaya respectfully requests that the Court grant her Motion to Quash, quash the Subpoena, and grant such other relief as the Court deems necessary.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 3,446 words.

I certify under penalty of perjury that the foregoing is true and correct.

DAVIS WRIGHT TREMAINE LLP

By: */s/ Rachel Strom*
Rachel Strom
rachelstrom@dwt.com
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone (212) 402-4069

THOMAS & LoCICERO PL

Dana J. McElroy (*admitted pro hac vice*)
Florida Bar No. 845906
dmcelroy@tlolawfirm.com
915 Middle River Drive, Ste. 309
Fort Lauderdale, FL 33304
Telephone (954) 703-3416

James J. McGuire (*admitted pro hac vice*)
Florida Bar No. 187798
jmcguire@tlolawfirm.com
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060

*Attorneys for Non-Party Lily Dobrovolskaya*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this **7th** day of **February, 2025**, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties and counsel of record via electronic mail and U.S. mail to attorneys for Monarch Air Group, LLC, Joshua R. Kon, Esq., jkon@stoklaw.com; Yosef Y. Kudan, Esq., ykudan@stoklaw.com; of Stok Kon+Braverman, One East Broward Boulevard, Suite 915, Fort Lauderdale, Florida 33301.

*/s/ Rachel Strom*
Attorney