UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LILY DOBROVOLSKAYA,<br><br>                         Movant,<br><br>      -against-<br><br>MONARCH AIR GROUP, LLC,<br><br>                        Respondent. | Case No. 1:25-mc-00032 (JLR)<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

On January 16, 2025, Lily Dobrovolskaya ("Movant" or "Dobrovolskaya") initiated this miscellaneous action, seeking an order quashing a nonparty subpoena served on her by Respondent Monarch Air Group, LLC ("Respondent" or "Monarch"), in connection with a defamation lawsuit currently pending in the United States District Court for the Southern District of Florida, *Monarch Air Group, LLC v. Journalism Development Network, Inc.*, No. 23-cv-61256 (S.D. Fla. filed June 30, 2023) (the "Florida Litigation"). *See* Dkt. 1. For the following reasons, the Court GRANTS the motion to quash.

## BACKGROUND

Dobrovolskaya is a professional investigative journalist and the author of an allegedly defamatory article about Monarch (the "Article"). Dkt. 6 ("Dobrovolskaya Decl.") ¶¶ 3, 5; *see* Dkt. 5-2 ("Fla. Compl.") ¶ 1. The Article was based on Dobrovolskaya's newsgathering efforts, including communications with two former pilots at Monarch on condition of anonymity, and discussions with Patrick Simpson ("Simpson"), a blogger who had previously written about Monarch. Dobrovolskaya Decl. ¶¶ 7-8. On November 27, 2020, the Organized Crime and Corrupt Report Project, an organization owned and controlled by Journalism Development Network, Inc. ("JDN"), published the Article online. Fla. Compl. ¶¶ 1, 22, 24.

Prior to the Article's publication by JDN, Dobrovolskaya also "corresponded with reporters and editors at The Miami Herald regarding a potential collaboration." Dobrovolskaya Decl. ¶ 8. The Article was not published in the Miami Herald.

On June 30, 2023, Monarch filed the Florida Lawsuit, asserting defamation *per se* and defamation by implication claims against JDN and Dobrovolskaya, as well as a defamation *per se* claim against Dobrovolskaya arising out of a Twitter post on November 28, 2020, about a division of Monarch known as Mercury Jets (the "Mercury Jets Tweet"). Fla Compl. ¶¶ 53-68. All claims against Dobrovolskaya have since been dismissed due to Monarch's failure to provide Dobrovolskaya with pre-suit notice as required by Florida law, as well as related pleading deficiencies. Dkt. 5-3 at 10; Dkt. 5-4 at 2.

The subpoena Dobrovolskaya seeks to quash was issued by the United States District Court for the Southern District of Florida on December 18, 2024. Dkt. 5-1 at 1. Monarch served Dobrovolskaya with the subpoena on December 27, 2024. Dobrovolskaya Decl. ¶ 2. The parties subsequently agreed "to significantly narrow the scope of the documents and materials sought." Dkt. 5 ("McElroy Decl.") ¶ 3. The parties have now reached an impasse on the following categories and documents sought by Monarch: "(a) recordings of interviews with two confidential sources quoted in the article at issue in the Florida Litigation"; "(b) pre-publication communications about the article at issue with The Miami Herald"; "(c) communications with blogger Patrick Simpson"; and "(d) documents concerning the basis for the 'tweet' that Ms. Dobrovolskaya posted on November 28, 2020, concerning [Monarch's] 'Mercury Jets Division' and its relationship to [Monarch]." McElroy Decl. ¶ 4.

Dobrovolskaya filed the instant motion to quash on January 16, 2025, asserting that the materials sought are privileged under the First Amendment, New York law, and Florida

2

law.  Dkt 3 ("Br.") at 1, 5-7.  Monarch filed its opposition, and the motion is fully briefed.  *See* Dkt. 12 ("Opp."); Dkt. 15 ("Reply").

## LEGAL STANDARD

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that," among other things, "requires disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(d)(3)(A), (A)(iii); *accord Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 203 (S.D.N.Y. 2023).  "[T]he burden of persuasion in a motion to quash a subpoena . . . is borne by the movant." *Marshall Project, Inc. v. City of Cleveland*, No. 24-mc-00309 (VEC), 2024 WL 4589667, at *2 (S.D.N.Y. Oct. 28, 2024) (alteration and omission in original) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)).  "[M]otions to quash a subpoena are . . . 'entrusted to the sound discretion of the district court.'" *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

## DISCUSSION

Dobrovolskaya seeks to quash the subpoena, asserting the journalist's privilege.  Br. at 4-5.  The parties do not dispute that Dobrovolskaya is entitled to assert the privilege, but instead disagree about whether the privilege can be overcome.  Dobrovolskaya argues that the confidential-source recordings are covered by the New York Shield Law's absolute privilege against disclosure of information received in confidence, and that the New York Shield Law's qualified privilege for nonconfidential unpublished newsgathering material protects the other three categories of documents and materials sought.  *Id.* at 5-6.  The Court will discuss the confidential-source recordings before turning to the remaining requests.

## I.  Recordings of Confidential Sources

Monarch seeks recordings of interviews with two confidential sources quoted in the Article.  McElroy Decl. ¶ 4; *see* Dkt. 5-1 at 7-8.  Dobrovolskaya argues that the subpoena should be quashed as to these recordings because they are absolutely privileged under New York law.  *See* Br. at 8.  Monarch contends that Florida law, not New York law, applies, but that in any event that it can overcome the privilege under either state's law.  *See* Opp. at 4-13.  Since the parties disagree about the applicable state law, the Court starts with a choice-of-law analysis before determining whether the confidential-source recordings are protected against disclosure.

### A.  Choice of Law

"A federal court, sitting in diversity, must look to the choice-of-law rules of the state in which it sits . . . to resolve conflict-of-law questions." *AroChem Int'l, Inc. v. Buckle*, 968 F.2d 266, 269-70 (2d Cir. 1992) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Under New York choice-of-law rules, "'the first step in any choice of law inquiry is to determine whether there is an "actual conflict"' between the rules of the relevant jurisdictions." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (quoting *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419-20 (2d Cir. 2001)).  The New York Shield Law, N.Y. Civ. Rights Law § 79-h, provides reporters with an "absolute privilege against the compelled disclosure of 'news obtained or received in confidence or the identity of the source of such news.'" *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 476 (S.D.N.Y. 2016) (quoting N.Y. Civ. Rights Law § 79-h(b)).  By contrast, Florida provides only a qualified privilege for journalists against the disclosure of confidential newsgathering material.  *See* Fla. Stat. § 90.5015(2) (2024); *Monarch Air Grp., LLC v. Journalism Dev. Network, Inc.*, --- F. Supp. 3d ---, 2024 WL 4826040, at *2 (S.D. Fla. Nov. 19, 2024) (*Monarch I*) ("Florida's qualified

4

statutory privilege 'applies to both confidential and non-confidential sources, and in both criminal and civil cases.'" (quoting *Muhammad v. State*, 132 So. 3d 176, 190 (Fla. 2013))). Accordingly, the Court finds that a conflict exists. *Cf. Kinsey*, 991 F.3d at 176 (holding that an actual conflict existed where New York fair-report privilege provided an absolute privilege, while the District of Columbia's was qualified).

The Court thus turns to the second step of the choice-of-law inquiry, "apply[ing] New York choice-of-law rules to decide which jurisdiction's substantive law controls." *Kinsey*, 991 F.3d at 176. "'In tort cases, New York applies the law of the state with the most significant interest in the litigation,' considering whether a rule is 'conduct-regulating' or 'loss-allocating.'" *Press v. Primavera*, 685 F. Supp. 3d 216, 226 (S.D.N.Y. 2023) (quoting *Kinsey*, 991 F.3d at 176). Because privilege rules are considered "conduct-regulating," New York applies the law of the "locus" of the conduct at issue, "because of [the locus jurisdiction's] interest in affecting the conduct of those who act within the jurisdiction and of a reliance interest on the part of the actors whose conduct is at issue." *AroChem*, 968 F.2d at 270; *accord Breaking Media, Inc. v. Jowers*, No. 21-mc-00194 (KPF), 2021 WL 1299108, at *3 n.2 (S.D.N.Y. Apr. 7, 2021).

The Court concludes that New York law applies. Here, the matters sought to be discovered stem from conduct based in New York. Dobrovolskaya is a New York domiciliary, carried out her newsgathering, research, writing, and editing activities in New York, and New York has expressed a strong interest in protecting the activities of its domiciliary journalists through application of its privilege law. *See* Dobrovolskaya Decl. ¶¶ 1, 6; *Breaking Media*, 2021 WL 1299108, at *3 n.2 (applying New York law where a publisher, the subpoena recipient, was headquartered in New York, primarily carried out its publishing activities in New York, and New York had expressed a strong interest in protecting

5

the activities of domiciliary news publishers); *Stephens v. Am. Home Assurance Co.*, No. 91-cv-02898 (JSM) (KAR), 1995 WL 230333, at *6-7 (S.D.N.Y. Apr. 17, 1995) (similar).

Monarch's arguments that Florida law should apply are unpersuasive. Monarch relies on cases that considered conflict-of-law questions regarding defamation claims, not the choice of law to apply to a journalist's privilege claim. *See Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 167 (S.D.N.Y. 2021) (considering "which state's substantive law applie[d] to [plaintiff]'s defamation claims"); *Cummins v. Suntrust Cap. Mkts., Inc.*, 649 F. Supp. 2d 224, 236-38 (S.D.N.Y. 2009) (same), *aff'd*, 416 F. App'x 101 (2d Cir. 2011) (summary order); *La Luna Enters., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 388 (S.D.N.Y. 1999) (same). Monarch's argument that Florida law should apply because certain conduct happened in Florida — namely, the allegedly defamatory statements directed at a Florida company, with harm felt in Florida — misses the mark. That conduct would be relevant to determining the law to be applied to the underlying defamation claim. *See, e.g.*, *Kesner*, 515 F. Supp. 3d at 168-69. But to determine what law to apply to a motion to quash based on a journalistic privilege, the Court considers where the privileged conduct occurred — here, Dobrovolskaya's interviews with confidential sources, research, writing, and reporting. The locus of this conduct is New York. *See* Dobrovolskaya Decl. ¶ 6 (averring that Dobrovolskaya "conducted all [her] research, interviews, and newsgathering for the Article . . . while located in New York").

As a result, the Court finds that New York law applies to Dobrovolskaya's assertion of privilege as to the confidential-source recordings.

**B. Analysis**

In the course of Dobrovolskaya's research for the Article, she spoke with two former Monarch pilots on condition of anonymity, and "[a]ll communications with [them] were confidential and undertaken with the expectation that [she] would not disclose their

6

identities." Dobrovolskaya Decl. ¶ 7. Dobrovolskaya contends that the recordings of those interviews are absolutely privileged under New York law. The Court agrees.

New York law "provides an absolute privilege against the compelled disclosure of 'news obtained or received in confidence or the identity of the source of such news,'" and "bars compelled disclosure of 'news or its source obtained in confidence.'" *Giuffre*, 221 F. Supp. 3d at 476 (first quoting N.Y. Civ. Rights Law § 79-h(b); and then quoting *Baines v. Daily News L.P.*, 26 N.Y.S.3d 658, 662 (Sup. Ct. 2015)). Since Dobrovolskaya's interviews with the pilots took place on condition of anonymity and she obtained information from them in confidence, those communications are "absolutely privileged from disclosure." *Id.*; *see also, e.g.*, *Flynn v. NYP Holdings Inc.*, 652 N.Y.S.2d 833, 835 (App. Div. 1997) ("[I]f the requested documents were deemed confidential, defendants would be afforded unqualified protection from having to divulge such sources or materials.").

Monarch's argument that the absolute privilege can be overcome under New York law is unpersuasive. *See* Opp. at 6-8. In so arguing, Monarch relies on *Sharon v. Time, Inc.*, 599 F. Supp. 538 (S.D.N.Y. 1984). *See* Opp. at 7. Monarch again confuses potential liability for defamation with whether a journalist can be compelled to disclose confidential sources and information. While rejecting that a magazine was absolutely immune from a defamation suit, 599 F. Supp. at 553-56, in *Sharon*, the court held that the New York Shield Law permitted press defendants to "keep [their] sources confidential" and prohibited the plaintiff from relying on the journalist's "refusal to reveal his sources to find actual malice," *id.* at 582-83. Although the *Sharon* court held that a reporter may be asked some general questions about whether he had a source and the reliability of the information obtained, *id.* at 583, *Sharon* does not support compelling Dobrovolskaya to produce the recordings of her conversations with confidential sources, and the Court will not do so.

7

The Court would reach the same conclusion even if it applied Florida law. Florida law provides a qualified privilege for confidential newsgathering material, which a party can overcome by making a "clear and specific showing" that (1) the information is "relevant and material to the unresolved issues in the proceeding for which the information is sought," (2) "cannot be obtained from alternative sources," and (3) there is a "compelling interest . . . for requiring disclosure of the information." *Cable News Network, Inc. v. Black*, 308 So. 3d 997, 999 (Fla. Dist. Ct. App. 2020).

Monarch has not made such a showing. In particular, Monarch has not shown that the information contained in the recordings cannot be obtained from alternative sources. "Importantly, '[i]t is not whether the form of the evidence itself is unavailable but, rather, whether the information revealed by the evidence is otherwise unavailable.'" *Monarch I*, 2024 WL 4826040, at *3 (alteration in original) (quoting *United States v. Thompson*, No. 14-cr-20522, 2015 WL 1608462, at *3 (S.D. Fla. Apr. 10, 2015)). Monarch asserts that it can only obtain the information in the recordings from Dobrovolskaya because the recordings are exclusively within her possession, it has exhausted avenues for obtaining the information through JDN, and no other third-party source can provide the information. Opp. at 11. The Court is not persuaded. Monarch could obtain the information in the recordings — that is, what the former pilot confidential sources told Dobrovolskaya — by taking steps to interview its former pilots or employees who may have provided the information to Dobrovolskaya. The information provided by one of the confidential sources concerned Monarch employees resigning because they were not being paid. Dkt. 5-5 at 9. Information about whether and why former Monarch employees resigned could be obtained from the former employees (none of whom have been deposed) or material within Monarch's own possession. The second confidential source provided information about cocaine being discovered on a Monarch

aircraft in 2011, *id.* at 3, but Monarch has not sought to depose or gather information from any crew member, pilot, or passengers related to that incident. The Court further rejects Monarch's argument that it requires the recordings themselves to capture "tone, context, and meaning," Opp. at 11, given Monarch's representation elsewhere that it would be satisfied with transcriptions of the recordings, *see id.*, which would not capture such nuances.

The Southern District of Florida's recent resolution of another discovery dispute in this case is instructive. *See generally Monarch Air Grp., LLC v. Journalism Dev. Network, Inc.*, No. 23-cv-61256, 2025 WL 445491 (S.D. Fla. Feb. 10, 2025) (*Monarch II*). There, Monarch sought to overcome the journalist's privilege to obtain "communications with a confidential source and excerpts of audio recordings." *Id.* at *5. The court rejected Monarch's request, reasoning that the information sought was "not the . . . type[] of internal communications and other material[] . . . that contain[s] information [Monarch] can only obtain from [JDN]," and Monarch had not "attempted to depose [its] former employees who may have provided the information at issue." *Id.* So too here. Even if, as Monarch contends, the information contained in the recordings is "relevant and material" and there is a "compelling interest" in disclosure, Monarch's failure to demonstrate that the information cannot be obtained from alternative sources is dispositive. *See id.*; *Green v. Off. of the Sherriff's Off.*, No. 99-cv-00658, 2002 WL 32128623, at *2 (M.D. Fla. Nov. 4, 2002) (granting motion to quash where plaintiff failed to establish one of the three elements, since "each of the . . . three elements must be shown" to overcome the privilege). As a result, Monarch cannot overcome the journalist's qualified privilege under Florida law.

Because the confidential-source recordings are absolutely privileged under New York law and Monarch could not overcome the qualified privilege even if the Court applied Florida law, the Court will grant the motion to quash as to the recordings.

## II. Nonconfidential Newsgathering Documents and Materials

Dobrovolskaya next seeks to quash the subpoena as to (1) her pre-publication communications about the Article with the Miami Herald, (2) her communications with Simpson, and (3) documents relating to the Mercury Jets Tweet. Br. at 11-18. She asserts that the materials are privileged under either New York or Florida's qualified privilege for nonconfidential newsgathering material, and that the same analysis applies regardless of which state's law applies. *See id.* at 4-7. Monarch argues that Florida law applies, but acknowledges that New York law is "effectively equivalent." Opp. at 13; *see id.* at 4-5, 12-13. Since the tests to overcome the qualified privilege are nearly identical, the Court need not engage in a choice-of-law analysis. For the reasons that follow, the Court will grant the motion to quash as to the remaining categories of documents and materials.

### A. Legal Standard

The New York Shield Law provides journalists with a qualified privilege as to news that is "both unpublished and not obtained under a promise of confidentiality." *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 107 (2d Cir. 2012) (citing N.Y. Civ. Rights Law § 79-h). Florida law provides a similar qualified privilege for "information . . . obtained while actively gathering news." Fla. Stat. § 90.5015(2); *accord Monarch I*, 2024 WL 4826040, at *2; *see also Gregory v. Miami-Dade County*, No. 13-cv-21350, 2015 WL 3442008, at *3 (S.D. Fla. May 28, 2015) (explaining that the qualified privilege "applies whether the professional news gathering efforts and results are published or not" (citing *McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39, 44 (N.D. Fla. 1998))).

To overcome the qualified privilege under New York Law, a party must make "a clear and specific showing" that the material: "(i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto;

and (iii) is not obtainable from any alternative source." *Baker*, 669 F.3d at 108 (quoting N.Y. Civ. Rights Law § 79-h(c)). Florida law requires a nearly identical showing. *See Muhammad*, 132 So. 3d at 189-90 (party seeking to overcome privilege must, by a clear and specific showing, "demonstrate that the journalist's information is relevant, that the information cannot be reasonably obtained from alternative sources, and that a compelling interest exists requiring disclosure").

### B. Communications with the Miami Herald

Monarch seeks "[d]ocuments and communications between [Dobrovolskaya] and the Miami Herald regarding the subjects of the Article and any documents showing why the Miami Herald turned down the publication of the Article." Dkt. 5-1 at 7. Dobrovolskaya argues that this subpoena request should be quashed because the documents and communications are privileged under New York and Florida law, and because Monarch cannot make the showing necessary to overcome that qualified privilege. Br. at 11-14; *see also* Reply at 8-9. The Court agrees with Dobrovolskaya.

First, Monarch has not shown that the communications between Dobrovolskaya and the Miami Herald are "highly material and relevant" to the defamation claims in the Florida Litigation. Monarch contends that the communications are material and relevant because they "directly relate[] to a core issue in a lawsuit," namely, JDN's state of mind at publication of the Article, since they could show that "*Herald* editors raised concerns about the Article's credibility or declined to publish it due to doubts about its veracity." Opp at 14. But Monarch's argument is based on pure speculation and does not meet the required heightened standard for overcoming the privilege.

The Southern District of Florida's decision in another discovery dispute in the Florida Litigation is instructive. *See generally Monarch I*, 2024 WL 4826040. In *Monarch I*,

Monarch sought the same communications from the McClatchy Company, a nonparty to the Florida Litigation and the publisher of the Miami Herald, that it seeks from Dobrovolskaya now. *See* 2024 WL 4826040, at *1. The court found that Monarch had not made the necessary showing to overcome the qualified privilege under Florida law, in part because it had not shown that the information sought was highly relevant. *See id.* at *2. Specifically, the court found that Monarch did not have any nonhearsay basis for its assertion that the Miami Herald ultimately declined to publish the Article, and that Monarch failed to explain the basis for its "'justifiable belief' that The Miami Herald declined to publish the article because it contained falsities" with anything other than speculation. *Id.* Here too, Monarch relies on that same conjecture. Not only is Monarch speculating about the reason the Miami Herald might have declined to publish (if it did so at all), but such information would not speak to whether JDN, the only defendant in the present case, knew anything about those reasons. Such "speculation does not cut it, particularly when [Monarch] bears a 'heavy burden' of satisfying this element by 'clear and convincing evidence.'" *Monarch I*, 2024 WL 4826040, at *2; *see also In re App. of Home Box Off., Inc.*, 103 N.Y.S.3d 794, 799 (Sup. Ct. 2019) (outtake footage protected by New York Shield Law was not highly relevant, in part because Monarch was "not able to definitively state what [was] contained in the outtake footage" and therefore could not "factually assert that the footage [was] highly material and relevant to her defense"). The Court does not find persuasive Monarch's claim that its request is not based on speculation because Dobrovolskaya admitted that there are communications between her and the Miami Herald regarding a "potential collaboration." Opp. at 14 (quoting Dobrovolskaya Decl. ¶ 8); *see id.* at 13-14. The issue in *Monarch I* was not whether such communications existed, but what the communications might reveal and whether Monarch had demonstrated their relevance by clear and convincing evidence. *See* 2024 WL 4826040,

12

at *2. As in *Monarch I*, Monarch's arguments that the information would be relevant to its defamation claims are based entirely on speculation about what the communications contain and what JDN knew about them.[1]

Monarch also has not shown that the Miami Herald communications are "critical or necessary" to the maintenance of its claim or that it has a "compelling interest" in disclosure. To determine that newsgathering material is "critical or necessary . . . there must be a finding that the claim for which the information is to be used virtually rises or falls" with the sought-after information. *Baker*, 669 F.3d at 108 (quoting *In re App. to Quash Subpoena to Nat'l Broad. Co.*, 79 F.3d 346, 351 (2d Cir. 1996)) (discussing New York Shield Law); *see also McCarty*, 195 F.R.D. at 47 (to overcome journalist's privilege under Florida law, party must show that they "cannot otherwise establish [their] entitlement to relief on [their] asserted claim" without the information). "The test is not merely that the material be helpful or probative, but whether or not . . . the action may be presented without it." *Baker*, 669 F.3d at 108 (omission in original) (quoting *In re Am. Broad. Cos.*, 735 N.Y.S.2d 919, 922 (Sup. Ct. 2001)). As discussed, Monarch has not established that the Miami Herald communications

---

[1] Monarch's reliance on *Gregory*, *Black*, and *McCarty* is unpersuasive. *See* Opp. at 14-15. In *Gregory*, the court found that the "nature and significance of the testimony sought by the [d]efendant from the reporter [was] not speculative, but [was] specific and highly relevant to the [d]efendant's claims" because the defendant had adduced "substantial information" about what the reporter's testimony was expected to show. 2015 WL 3442008, at *5. Similarly, in *Black*, the party seeking disclosure showed that there were communications between CNN and a confidential source about the subjects of the allegedly defamatory statements that would show what CNN knew at the time of publication. 308 So. 3d at 1001. Here, however, Monarch provides only conjecture about what the Miami Herald communications might contain, and it is even further attenuated from what JDN may have known at publication. Thus, this information bears only a tenuous connection to the core claims in the Florida Litigation. Finally, *McCarty* undermines Monarch's claims that disclosure is warranted whenever information relates to a "core" issue in the underlying suit, since that court ultimately granted the motion to quash because respondent did not show there was a compelling interest requiring disclosure and that the information could not be obtained from other sources. 195 F.R.D. at 47.

are highly relevant to its claim, let alone that its claim cannot be sustained without those communications. In fact, Monarch makes almost no effort to make this showing, except for stating in passing that the documents are "highly relevant, if not critical" to the claims and affirmative defenses in the Florida Litigation. Opp. at 13. Such bald assertions are not enough. *See In re Home Box Off.*, 103 N.Y.S.3d at 800 (party seeking privileged information could not overcome the privilege where it could not "argue that any information contained in [the communications was] critical and necessary when [it] d[id] not know what the [communications] actually [contained]"); *Seo v. Kim*, No. 02-01217, 2002 WL 31445224, at *4 (Fla. Cir. Ct. Apr. 9, 2002) (party did not make clear and convincing showing of compelling interest where it could only speculate that the sought-after "videotaped interview . . . *may* be useful in proving . . . inconsistencies").

Because Monarch has not overcome the qualified privilege under New York or Florida law by clear and convincing evidence, the Court grants the motion to quash the subpoena as to the communications with the Miami Herald.

### C. Communications with Simpson

Monarch next seeks "[a]ll communications and documents exchanged between [Dobrovolskaya] and Patrick Simpson, including but not limited to communications with Patrick Simpson regarding providing a credit to him in the Article." Dkt. 5-1 at 8. Dobrovolskaya attests that she corresponded with Simpson "regarding some research related to Monarch" and that the correspondence was all "related to the research and newsgathering that [she] performed during [her] preparation of the Article." Dobrovolskaya Decl. ¶ 8. Dobrovolskaya argues that the subpoena should be quashed as to these communications because Monarch cannot satisfy any element required to overcome the qualified privilege.

14

*See* Br. at 14-16. The Court agrees that the subpoena should be quashed as to these communications.

In particular, Monarch has failed to demonstrate that the information contained in the communications and documents cannot be obtained from any other source. Under New York law, this requires Monarch to "establish[] that [it] has turned to [Dobrovolskaya] 'only as a last resort.'" *Giuffre*, 221 F. Supp. 3d at 480 (quoting *In re Grand Jury Subpoenas Served on Nat'l Broad. Co.*, 683 N.Y.S.2d 708, 711 (Sup. Ct. 1998)). Under Florida law, Monarch must similarly "make a clear and specific showing that the information cannot be obtained from alternative sources." *Gubarev v. BuzzFeed, Inc.*, No. 17-cv-60426, 2017 WL 6547898, at *4 (S.D. Fla. Dec. 21, 2017). Monarch argues that it has taken reasonable steps to obtain the information directly from Simpson by subpoenaing him. Opp. at 16. Simpson produced some documents, but informed Monarch that "he did not have some emails and documents within his possession anymore." *Id.* Monarch contends that Dobrovolskaya "is the only individual with access to this missing information." *Id.* But "[i]t is not whether the form of the evidence itself is unavailable but, rather, whether the information revealed by the evidence is otherwise unavailable." *Monarch I*, 2024 WL 4826040, at *3 (alteration in original) (citation omitted). Monarch could take steps to obtain the information at issue by, for example, deposing Simpson or serving him with interrogatories. *See id.*; *Gubarev*, 2017 WL 6547898, at *4 (party had not met their burden of making a clear and specific showing that information could not be obtained through other sources where depositions of alternate sources had not yet taken place); *Giuffre*, 221 F. Supp. 3d at 480 (similar). It has not done so, and therefore cannot overcome the qualified privilege under either state's law.[2]

---

[2] Even if the Court found the information could not be obtained from other sources, it would still grant the motion to quash. Monarch offers only speculation as to why the

15

The Court will grant the motion to quash the subpoena as to communications and documents exchanged between Dobrovolskaya and Simpson.

### D. Documents Concerning Mercury Jets Tweet

Finally, Monarch seeks "[d]ocuments supporting any investigation or analysis of [Dobrovolskaya's] [Twitter] post on November 28, 2020" about Mercury Jets. Dkt 5-1 at 9. Dobrovolskaya states that the Mercury Jets Tweet "was based on the same research and newsgathering [she] performed during [her] preparation of the Article." Dobrovolskaya Decl. ¶ 9. She now seeks to quash the subpoena as to the documents supporting this post, arguing that Monarch cannot overcome the privilege because the documents are not relevant to the claims in the Florida Litigation and the documents are not critical or necessary to the maintenance of those claims. Br. at 16-18. The Court agrees with Dobrovolskaya.

Monarch has not shown by clear and convincing evidence that the documents supporting the Mercury Jets Tweet are highly relevant and material to the defamation claims in the Florida Litigation. Monarch argues that the documents are relevant because they were collected during the reporting and research for the Article, and therefore could indicate whether Dobrovolskaya and JDN left out certain facts or mischaracterized them. Opp. at 17-18. But Dobrovolskaya, not JDN, wrote and published the Mercury Jets Tweet, and did so after the publication of the Article, making the Mercury Jets Tweet's relevance to the defamation claim against JDN tenuous at best. These documents might have been relevant to the defamation claim against Dobrovolskaya based on the Mercury Jets Tweet, but that claim has been dismissed from the litigation, along with all other claims against her. To try to get

---

communications would be relevant, and has not explained why its defamation claims against JDN rise and fall based on communications between two nonparties to this litigation. *See* Opp. at 15-17. This is not enough to satisfy either element by clear and convincing evidence. *See Monarch I*, 2024 WL 4826040, at *2 & n.4.

around this, Monarch postulates that since the research underlying the Mercury Jets Tweet was collected in the course of Dobrovolskaya's research for the Article, she might have "relied on the same investigative materials for both the Article and the tweet," *id.* at 17, and the information related to the Mercury Jets Tweet might then have been excluded from the Article because "JDN and Dobrovolskaya did not believe those statements to be true," *id.* at 18. Not only is Monarch hypothesizing that there is a relationship between the allegedly defamatory statements in the Article and the research for the Mercury Jets Tweet, Monarch does not provide any basis for its contention that JDN knew about the Mercury Jets Tweet, that JDN declined to include the content of the Mercury Jets Tweet in the Article, or that the reason JDN did so was because it believed the statements to be false. Monarch provides nothing but speculation to link what Dobrovolskaya knew at the time the Mercury Jets Tweet was published to what JDN knew when the Article was published. As with the Miami Herald communications, Monarch "has failed to show that its contention that the information sought is 'highly relevant' . . . is supported by anything other than speculation." *Monarch I*, 2024 WL 4826040, at *2. This is not enough to overcome the privilege under either New York or Florida law, particularly since Monarch does not explain how this information is necessary to prove actual malice or any other related issue in the Florida Litigation. *See Aberdeen City Council v. Bloomberg L.P.*, 688 F. Supp. 3d 169, 183 (S.D.N.Y. 2023) ("[A] movant's mere belief that documents exist in a journalist's files is insufficient to overcome the qualified privilege."); *Monarch I*, 2024 WL 4826040, at *2 n.4 (speculative reasons to support contention that information sought was necessary to proper presentation of case or that compelling interest existed requiring disclosure were insufficient to overcome privilege); *see also In re App. of Home Box. Off.*, 103 N.Y.S.3d at 800 (respondent did not show information

was "critical or necessary" where she did not show "that this footage [was] the only way she can establish her defense of reasonable doubt").[3]

Since Monarch has failed to show that it has overcome the journalist's privilege under either Florida or New York law, the Court grants the motion to quash as to the documents underlying the Mercury Jets Tweet.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to quash in its entirety. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 1 and close the case.

Dated: March 7, 2025
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge

---

[3] The Court is not persuaded by Monarch's suggestion that *Dobrovolskaya* must show that the materials she relied on in her reporting are irrelevant to Monarch's claims to be entitled to the qualified privilege. *See* Opp. at 18-19. Both New York's and Florida's statutes are clear that the party seeking to overcome the privilege must prove relevance, not the party asserting the privilege. *See* Fla. Stat. § 90.5015(2) ("A party seeking to overcome this privilege must make a clear and specific showing [of the three statutory elements]."); N.Y. Civ. Rights Law § 79-h(c) (similar).